NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

EAGLE EXPRESS LINES, INC., and
EDWARD ALLEN CARHART,
*Petitioners*,

*v.*

THE HONORABLE DANIEL KILEY,
Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for
the County of MARICOPA,
*Respondent Judge*,

JEVEDIA MUHAMMAD,
*Real Party in Interest.*

No. 1 CA-SA 18-0261
FILED 12-13-2018

Petition for Special Action from the Superior Court in Maricopa County
No.  CV2016-001060
CV2016-001970
The Honorable Daniel J. Kiley, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED**

COUNSEL

Wood, Smith, Henning & Berman, LLP, Phoenix
By Jill Ann Herman, Samantha J. Kattau
*Counsel for Petitioners*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Randall M. Howe joined.

---

J O H N S E N, Judge:

¶1        Petitioners Eagle Express Lines, Inc. and Edward Allen Carhart seek special action relief from the superior court's denial of their motion to enforce a settlement agreement. For the reasons stated below, we exercise our discretion to accept jurisdiction and grant relief.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Represented by the Jenkins Law Firm, Jevedia Muhammad and her husband, Eric Muhammad, sued Petitioners, alleging Mr. Muhammad was injured in a car accident caused by Petitioners. Eventually, the Muhammads and their counsel participated in an in-person mediation with Petitioners' representatives. Ms. Muhammad left before the mediation ended to pick up the couple's daughter, and the mediation continued in her absence. Several weeks later, counsel for the Muhammads prepared and delivered to Petitioners' counsel a draft joint motion to stay the trial and vacate the final trial management conference. By email a little more than an hour later, Petitioners' counsel asked the Muhammads' counsel for written confirmation "that this matter will be resolved at" the sum they had agreed upon, and the Muhammads' counsel responded, "Confirmed."[1] Petitioners' counsel then drafted a settlement agreement and release and emailed it to the Muhammads' counsel, who responded the next day with information about to whom the settlement check should be made payable and the law firm's W-9. Within two hours, the Muhammads' counsel emailed a copy of the finalized settlement agreement and release to Petitioners' counsel saying, "This is what they will be signing. I will send the scanned document as soon as they sign it."

---

[1] The record shows that Petitioners, Mr. Muhammad and counsel for the Muhammads all understood the parties had agreed on a particular amount that Petitioners would pay to settle the matter. In the proceedings at issue here, the superior court and the parties attempted to avoid disclosing that amount in the public record, and we will do the same.

¶3        Thereafter, although Mr. Muhammad signed the settlement agreement, Ms. Muhammad refused to do so. Petitioners filed a motion to enforce the settlement agreement. The superior court set an evidentiary hearing, at which Petitioners' counsel and Mr. and Ms. Muhammad testified.

¶4        Petitioners' counsel testified that he understood the Muhammads' counsel had authority to settle the case on their behalf and that Petitioners relied on that authority. Mr. Muhammad testified he understood that Ms. Muhammad would sign the agreement. Ms. Muhammad testified she did not agree to settle at the specified amount. She stated that amount was insufficient to compensate the family for her husband's lost wages.

¶5        Ms. Muhammad offered in evidence a number of emails between her counsel and herself about the settlement. Among the emails was one to her and her husband, stating, "My understanding had always been that Jevedia was in agreement with whatever Eric decided. The first time I heard this was not the case was when I spoke with Jevedia to coordinate her coming into the office to sign the release." In an email urging Ms. Muhammad to sign the agreement, her counsel asserted that in his presence during the mediation, she had told her husband that she would be "okay with whatever Eric decided in terms of whether or not to settle the case," and she never rescinded that authority. The court, however, declined to admit the emails because some of them referenced the dollar amount specified in the settlement agreement.

¶6        Citing *Robertson v. Alling*, 237 Ariz. 345 (2015), Petitioners argued the evidence showed that the Muhammads' counsel had apparent authority to settle the case on behalf of his clients. The court denied the motion and also denied Petitioners' subsequent motion for reconsideration.

## JURISDICTION

¶7        Because Petitioners have no adequate remedy by appeal, we exercise our discretion to accept jurisdiction of this special action under Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes section 12-120.21(A)(4) (2018) and Arizona Rules of Procedure for Special Actions 1(a).[2]

---

[2]        Absent material revision after the relevant date, we cite the current version of a statute or rule.

## DISCUSSION

**¶8**        In *Robertson*, our supreme court held that a lawyer who lacks actual authority may settle a case on behalf of the client if the other settling party "reasonably assumes that the lawyer is authorized to do the act on the basis of the client's (and not the lawyer's) manifestation of such authorization." 237 Ariz. at 356, ¶ 17 (quoting Restatement (Third) of the Law Governing Lawyers § 27 (2000)).

**¶9**        In *Robertson*, as here, the lawyer and his clients had participated in an in-person mediation with representatives of the other side, but the mediation ended without an agreement. 237 Ariz. at 346, ¶ 2. As here, the two sets of lawyers thereafter continued to engage with each other about a settlement. *Id.* The lawyer's clients had extended a settlement offer that would be open for 48 hours after the mediation, but the offer expired before the other side accepted it. *Id.* Mistakenly believing his clients had authorized him to do so, the lawyer then sent the other side another offer that "mirrored the prior offer," extending the deadline to respond. *Id.* at 347, ¶¶ 3-4. After the other side accepted the offer, the lawyer's clients objected, arguing they had not authorized their lawyer to send the post-mediation offer. *See id.* at 347, ¶¶ 4-6.

**¶10**        The supreme court held the settlement was binding on the lawyer's clients. *Id.* at 349, ¶ 20. The court reasoned that, by engaging in settlement talks and then leaving their lawyer to negotiate the matter further, the clients had manifested their intention to the other side that their lawyer had authority to conclude a settlement. *Id.* at 349, ¶ 19; *see* Restatement (Third) of the Law Governing Lawyers § 27 cmt. d, illus. 4. Specifically, the clients' conduct allowed the other side to reasonably assume the lawyer had authority to keep the offer "on the table or reoffer the same settlement terms days after the agreement's expiration." *Robertson*, 237 Ariz. at 349, ¶ 20.

**¶11**        The evidence in the record here likewise demonstrated that the Muhammads led Petitioners to reasonably understand that the Muhammads' lawyer had authority to settle the case on their behalf. Both Mr. Muhammad and Ms. Muhammad appeared at the in-person mediation with Petitioners. Ms. Muhammad left the mediation before it concluded. The mediation continued in her absence, as she knew it would. In the absence of any evidence to the contrary, by leaving the ongoing mediation to continue without her, she led Petitioners to reasonably believe that she had authorized her lawyer and her husband to resolve the case on her behalf.

4

**¶12** In ruling that Petitioners had failed to show the lawyer had apparent authority to settle the case, the superior court correctly focused on the actions of Ms. Muhammad, not her lawyer. The court, however, erred by disregarding Petitioners' showing that Ms. Muhammad allowed her lawyer to negotiate on her behalf after she had left the mediation. As in *Robertson*, Ms. Muhammad's conduct allowed Petitioners thereafter to reasonably rely on her lawyer's apparent authority to settle the matter on her behalf.

## CONCLUSION

**¶13** For the reasons stated, we accept jurisdiction of the petition for special action and grant relief by directing the superior court to grant Petitioners' motion to enforce the settlement agreement.[3]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[3] Ms. Muhammad failed to file a response to the petition for special action. Although we might regard her failure to respond as a confession of error, in the exercise of our discretion, we choose to address the merits of the matter. *McDowell Mountain Ranch Cmty. Ass'n, Inc. v. Simons*, 216 Ariz. 266, 269, ¶ 13 (App. 2007).